FILED

2007 Jul-24  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TONY LOVE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-0298-S |
| | } | |
| WYETH, a corporation | } | |
| (formerly AMERICAN HOME | } | |
| PRODUCTS CORPORATION), | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Although there are other interesting and perhaps dispositive issues that are presented by the summary judgment motion filed by defendant, Wyeth, a corporation ("Wyeth"), the most important issue, and the one the court finds dispositive, rendering moot all other issues, is Wyeth's asserted bar of two statutes of limitations applicable to plaintiff's different claims. For this reason, the court will limit itself to a recitation of the bare, undisputed, procedural and substantive facts that bear on these limitations questions.

Plaintiff, Tony Love ("Love"), suffered an ischemic stroke on March 14, 1999, after ingesting Robitussin, a cold medicine manufactured by American Home Products Corporation, the predecessor to defendant Wyeth. Robitussin at that time contained phenylpropanolamine ("PPA"), an ingredient thereafter removed by the manufacturer upon the recommendation of the Food and Drug Administration. As a result of the stroke, Love suffered from

partial paralysis and numbness on his right side.  He had to relearn basic activities such as using the restroom, performing hygiene, and feeding himself.  His family has had to help him with things like dressing himself, reading, remembering things, and handling his financial affairs.  Exactly when he began to function more normally in these areas is not reflected in the record.  According to Kathy Ronan, Ph.D., a licensed psychologist who performed a psychological evaluation on Love in connection with his application for Social Security disability benefits, Love, at the time of that evaluation, had an I.Q. of between 59 and 67, and suffered from loss of memory, loss of cognitive ability, and a speech impairment.  Dr. Ronan did not opine that Love was "insane" or "legally incompetent".

On April 23, 2003, four years and forty days after this cause of action accrued on March 14, 1999, Love filed this suit, claiming that he was injured by Wyeth's (1) negligence, (2) violation of the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"), (3) breach of express warranty, and (4) breach of the implied warranty of merchantability.  In its answer, Wyeth, *inter alia*, interposed Alabama's two-year statute of limitations as a defense to the negligence and AEMLD claims and Alabama's four-year statute of limitations as a defense to the breach-of-warranty claims.

Before this court ruled on these statutes-of-limitations defenses, the case was transferred to the Multi District Litigation

(MDL) panel established to handle the many product-liability claims involving PPA, and was assigned to the United States District Court for the Western District of Washington for coordinated pre-trial proceedings.  While under supervision by the MDL panel, there was no briefing of, or ruling upon, Wyeth's statutes-of-limitations defenses.  On January 6, 2006, the case was remanded to this court, whereupon this court entered a scheduling order pursuant to Rule 26, F.R.Civ.P.  On April 30, 2007, within the time for filing dispositive motions, Wyeth filed its present motion for summary judgment with an accompanying brief.  As it turns out, the motion should have been filed sooner.

Without some sort of tolling device, all of Love's claims are clearly time barred.  Alabama's two-year statute of limitations applies to Love's negligence and AEMLD claims.  Ala. Code § 6-2-38(1).  Alabama's four-year statute of limitations governs Love's breach-of-warranty claims.  Ala. Code § 7-2-725(1).  As already pointed out, Love's complaint was filed more than four years after his stroke occurred.  Only after Wyeth filed its motion for summary judgment did Love, for the first time, put forward two theories for equitable tolling of one or both of the statutes of limitations. Love's first contention is that he was "insane", and his period of insanity interrupted the running of both statutes of limitations. He offers no proof that he was incompetent when he ingested the Robitussin, or, if he is implicitly saying that he became mentally

incompetent only as a result of his stroke, he offers no evidence as to when or if his disability terminated.  Love's alternative tolling device is based on the recently discovered fact that he was within the class description of a putative class action filed in a federal court in Louisiana after his two-year limitations period had run, but before the expiration of the four-year statute of limitations.  Love argues that the pendency of this putative class action suspended the four-year statute of limitations until class certification was denied.

### Love's Alleged Mental Disability as a Tolling Device

Love seeks a tolling of both statutes of limitations pursuant to Ala. Code § 6-2-8(a), which provides in pertinent part:

> If anyone entitled to commence any of the actions enumerated in this chapter . . . is, **at the time the right accrues**, below the age of 19 years, **or insane**, he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, **after the termination of the disability** to commence an action.

(emphasis supplied).

If the court were operating under common-law pleading rules, Love would have been obligated to plead this statute and to allege the facts necessary to invoke it as a rejoinder to Wyeth's statute-of-limitations defenses.  He would have had to allege all facts essential to a tolling, and would have the burden of proving them.  Under the more relaxed federal pleading rules, the court must tolerate Love's belated reliance upon this tolling statute,

mentioned for the first time after Wyeth had filed its motion for summary judgment. At this juncture, the best Love can hope for from this court is a finding that he has created a dispute of material fact bearing on the availability of § 6-2-8(a) to him as a tolling device. If a jury question exists as to if or when he was insane, the question of when his insanity ended is a question as to which he also had the burden of proof, and he has offered no proof on it. The purpose of Rule 56, F.R.Civ.P., is, of course, to avoid asking a jury to answer a question that can be answered by the court on the undisputed facts. Love is faced with several problems in his attempt to obtain tolling under § 6-2-8(a).

The first focus is on the statutory phrase "at the time the right accrues". This expression establishes that for tolling to have begun, Love's disabling condition must have actually existed at the time his cause of action accrued, namely, at the moment he suffered the stroke, and not at some other time. The Supreme Court of Alabama explained the meaning of the concept as follows in *Black v. Pratt Coal & Coke Co.*, 85 Ala. 504, 5 So. 89 (Ala. 1888):

> A party claiming the benefit of an exception or proviso in the statute of limitations can only avail himself of the disability **which existed when the right of action first accrued.**

(emphasis supplied).

5 So. 92. The Supreme Court of Alabama has never retreated from its 1888 position now enshrined in § 6-2-8(a). In other words, § 6-2-8(a) contemplates the existence of the disability, whether it

is the fact that the plaintiff is a minor or the plaintiff's insanity, at the very moment he suffered injury.  The nebulous evidence offered by Love on this subject reflects, if anything, a mild mental disability that may or may not have resulted from or been exacerbated by the stroke.  Love does not offer any evidence of actual mental incompetency at the time he took Wyeth's cold medicine.  Without evidence of incompetency before the stroke, there was no tolling.

A second provision in § 6-2-8(a), to be considered only if the court assumes *arguendo* that Love's alleged insanity occurred simultaneously with the accrual of his cause of action, and is thus deemed to have existed at the moment of accrual, is found in the words "after the termination of the disability".  There is no evidence whatsoever as to when Love's alleged "insanity" **terminated**.  For aught appearing, Love recovered his ability satisfactorily to function mentally within a relatively short time after his stroke so that the potential three-year tolling period provided by § 6-2-8(a) was not available to him long enough to outlast either of the applicable statutes of limitations.  Again, quoting the Supreme Court of Alabama in *Black v. Pratt Coal & Coke Co.*:

> The act of 1843 gives to infants, etc., five years within
> which to sue, "after the termination of their
> disabilities to bring suits."  The Codes reduce this
> proviso in favor of infants, etc., to three years.  Code
> 1852, § 2486; *Rawls v. Kennedy*, 23 Ala. 240; *Owen v.
> Slatter*, 26 Ala. 547.  This five years, or three, as the

case may be, is not necessarily an addition to the ten years prescribed by the statute.  It enlarges the ten years **only to the extent that may be necessary to secure to the demandant or suitor the five or three years, after he or she shall have attained to majority.**

5 So. 91 (emphasis supplied).  To avail himself of § 6-2-8(a), Love must offer proof not only that he was "insane" at the moment of accrual, but when his "insanity" terminated, or, if he is still insane, that such is the fact.  He has not done any of this.

The last fatal defect in Love's tolling claim requires a correct understanding of the controlling word "insane" in § 6-2-8(a).  There is an absence of any substantial evidence, much less any expert opinion, to support Love's bare assertion of his own "insanity" at any time.  It is interesting that Love's counsel was counsel for the plaintiffs in *Travis v. Ziter*, 681 So.2d 1348 (Ala. 1996), in which the Supreme Court of Alabama denied tolling under § 6-2-8(a) to a plaintiff who claimed "insanity".  There the Supreme Court of Alabama was dealing, as this court now is, with a defendant's motion for summary judgment based on a statute of limitations to which the plaintiff had asserted tolling by virtue of his alleged "insanity".  In *Travis*, the form of the alleged "insanity" was repressed memory of childhood sexual abuse.  Here, the "insanity" is apparently some level of diminished mental capacity.  The *Travis* court pronounced:

> Although the strict application of statutes of limitations is tempered somewhat by the narrow exceptions prescribed in the tolling provisions, the public policy behind the time-bar concept is quite clear:

> "Statutes of limitations are founded in part
> at least on general experience that claims
> which are valid usually are not allowed to
> remain neglected, and that the lapse of years
> without any attempt to enforce a demand
> creates a presumption against its original
> validity or that it has ceased to exist. The
> basic principle most generally relied on by
> the authorities is that statutes of
> limitations are statutes of repose, the object
> of which is to prevent fraudulent and stale
> claims from springing up after long periods of
> time and surprising the parties or their
> representatives when evidence has become lost
> or the facts have become obscure from the
> lapse of time. 53 C.J.S. *Limitations of*
> *Actions* § 1, at 902-903, and authorities cited
> therein."

*Stephens v. Creel*, 429 So.2d 278 (Ala.1983) (quoting
*Seybold v. Magnolia Land Co.*, 376 So.2d 1083, 1086
(Ala.1979)). Because statutes of limitations are a
necessary means of ensuring the reliability of the
fact-finding process, a court must exercise great caution
when a party seeks to apply the tolling mechanism found
in § 6-2-8.

The question before us is a difficult one because very
few modern cases examine the meaning of "insanity," as
used in § 6-2-8. While our cases recognize "the need to
protect individuals suffering under certain
disabilities," *Emerson v. Southern Ry. Co.*, 404 So.2d
576, 578 (Ala.1981), neither our statutes nor our case
law clearly defines the term "insane." Section 1-1-1,
Ala. Code 1975, defines the terms "lunatic," "insane,"
and "non compos mentis" as including "all persons of
unsound mind." It is unclear what constitutes an "unsound
mind" for purposes of tolling the running of the
limitations period until removal of the disability.

In *Alabama Power Co. v. Shaw*, 215 Ala. 436, 111 So. 17
(1926), the Court held that "insanity" encompasses
temporary unsoundness of the mind and recognized that the
word "signifies any derangement of the mind that deprives
it of the power to reason or will intelligently." 215
Ala. at 440, 111 So. at 20 (quoting *Johnson v. Maine &*
*N.B. Ins. Co.*, 83 Me. 182, 22 A. 107 (1891)). Shaw was
injured in an industrial accident when he was struck in

8

the head by a shattered pulley, and, for a period of time exceeding the time prescribed by the statute of limitations, Shaw was of "unsound mind." *Id.* Based on Shaw and decisions from other jurisdictions, the Travises contend that the insanity tolling provision should be construed broadly and liberally to apply to situations where a person, otherwise competent to marry, rear children, and remain employed, is unable to comprehend specific legal rights pertaining to a potential cause of action. Relying on Shaw, the Travises argue that the Court's acceptance of temporary insanity as a situation that will toll the running of the limitations period, together with the Court's recognition that the statutory term "insanity" is both "unexplained and unlimited," *Shaw*, 215 Ala. at 440, 111 So. at 20, supports a construction of § 6-2-8 that would be consistent with cases from other jurisdictions allowing a jury to determine whether memory repression constitutes a form of insanity.

\* \* \*

The ultimate consideration in determining whether to allow the Travises' claims to survive through application of the insanity disability tolling provision is whether the policy goals furthered and protected by the statute of limitations would remain intact if that were allowed. At its core, the statute of limitations advances the truth-seeking function of our justice system, promotes efficiency by giving plaintiffs an incentive to timely pursue claims, and promotes stability by protecting defendants from stale claims. The essence of the Travises' argument is that plaintiffs should be able to use the tolling provision in any situation where they can demonstrate an inability to comprehend a specific legal right, or to recall events that happened many years before, notwithstanding the fact that they have been capable of living an independent, normal, and productive life as to all other matters. Such an expansive interpretation would undermine the purpose of the statutes of limitations.

\* \* \*

We reject the Travises' argument that *Shaw*, *supra*, supports an expansive interpretation of the term "insanity." In *Shaw*, the Court recognized the following meaning of "insanity": "[I]t signifies any derangement of

the mind that deprives it of the power to reason or will intelligently." 215 Ala. at 440, 111 So. at 20.

681 So.2d 1352-1355.

How does Love define "insanity", and how does he go about proving it?  Love relies on his own testimony, on the testimony of his mother, Jessie Love, on the testimony of his daughter, Tia Love, and on Dr. Ronan's psychological evaluation.  His "insanity" is not repressed memory.  As best the court can understand it, his "insanity" is a temporary loss of his ability to function in a fully normal way.

Wyeth asserts, and Love does not dispute, that Love did not disclose Dr. Ronan as an expert witness as required by Rule 26(a)(2) and the scheduling order.  Love was on notice from the very beginning of this case that Wyeth claimed the statutes of limitations as defenses.  Because of Love's failure to disclose this expert witness, Wyeth had no opportunity to depose her or to take any other discovery with respect to her opinion, assuming that her opinion can be construed to suggest Love's "insanity" as a fact relevant to the applicability of § 6-2-8(a).  Dr. Ronan's psychiatric evaluation, which was offered to prove damages rather than "insanity", is inadmissible under Rule 37(c)(1), F.R.Civ.P., and the court will not consider it.  However, if the court were to consider Dr. Ronan's evaluation, it would nevertheless conclude that what Dr. Ronan says is insufficient to create a legitimate dispute over whether Love was "insane" within the meaning of § 6-2-

8(a).  Dr. Ronan's report indicates that Love has a lower than average I.Q., suffers memory loss and confusion, and has relatively low cognitive ability.  However, the report also states that Love's "adaptive behaviors were too high for a formal diagnosis of Retardation."  Giving Love the benefit of the doubt, Dr. Ronan's report falls short of establishing that Love was "insane" or "of unsound mind" for purposes of § 6-2-8(a), either before or after the stroke.

To the extent that Love relies on the lay-witness testimony of himself, his mother, and his daughter to establish that he was or is "insane", the court fails to find a jury issue.  Love admittedly re-learned how to perform basic activities, and he apparently can understand the implications of an oath, because he has testified under oath in this case.  A person of unsound mind cannot do so.

Although the court empathizes with Love's post-stroke problems, his proffered affidavits do not establish that he was or is, "insane" or of "unsound mind" to the degree contemplated by the tolling standard set up in § 6-2-8(a).  To grant Love tolling would be to invite a claim of tolling after any accident that interrupts for any period of time the perfect cognitive functions of an injured person.  The Supreme Court of Alabama has issued no such invitation.  If that Court said only two things in *Travis* pertinent to this case, they are: (1) that tolling statutes are not to be

11

construed liberally so as to allow the avoidance of statutes of limitations; and (2) that a party who seeks an exception to a statute of limitations has the affirmative obligation to demonstrate by substantial evidence that all elements necessary for tolling are present.  Love has not met this standard.

Paradoxically, if Love is "insane", he would need a guardian in order to proceed in this case.  No guardian appears, and no guardian *ad litem* has been asked for.

### The *Ricks* Class Action as a Tolling Device

Love concedes, as he must, that if "insanity" is ineffectual as a tolling mechanism, his action, insofar as it relies on theories of negligence and AEMLD, is time barred.  But, Love claims another tolling device that would allow him to proceed under his breach-of-warranty theories.  After Wyeth's motion for summary judgment was filed, Love's diligent counsel, using PACER, found and revealed to the court on May 14, 2007, that on February 23, 2001, Aline Ricks and Earnest Ricks filed in the United States District Court for the Eastern District of Louisiana a putative class action against five separate manufacturers of separate products, each containing PPA  One of the named defendants was American Home Products Corporation.  The putative class was described in the complaint as follows:

> All residents and domiciliaries of the United States of
> America and their spouses who have used medication
> containing PPA, which was manufactured, distributed, sold
> and/or placed into the stream of interstate commerce by

> defendants, and: (a) who have sustained any injury or
> damage thereby or (b) who may suffer such injury or
> damage in the future as a result thereof, or (c) who have
> sustained a justifiable fear of sustaining such injury or
> damage in the future as a result thereof.

Jurisdiction in the Louisiana federal court was based only on diversity. The named plaintiffs depended exclusively upon the theories of liability that they were provided by the state laws of fifty states. There were at least three other putative class actions filed by other plaintiffs on behalf of putative national classes of persons allegedly injured by PPA. Not one of these cases was ever certified as a class action. Love ostensibly has picked *Ricks* as his tolling measure because it provides the longest period between its filing and its non-certification.

*Ricks* was transferred to the MDL and was consolidated with other PPA cases. The motion to certify a class was denied on June 5, 2002. Based on *White v. Sims*, 470 So.2d 1191 (Ala. 1985), and *Crown, Cork & Seal Co. v. Parks*, 462 U.S. 350, 103 S.Ct. 2392 (1983), Love argues that the limitations period was tolled during the 467 days between February 23, 2001, the date upon which the *Ricks* action was filed, and June 5, 2002, the date upon which its possibility of its becoming a *bona fide* class action disappeared. Such a tolling, if available, would provide Love an escape from the four-year statute of limitations that otherwise would bar his breach-of-warranty claims.

Love correctly cites *White* for the general rule that in

Alabama a statute of limitations is tolled during the pendency of a putative class action in which an otherwise late filing plaintiff was a member of the putative class. Unfortunately, the issue is not quite that simple. There are several complicating factors that, in final analysis, remove this case from the automatic tolling that would get around the four-year statute of limitations.

Love gives *White* a much more expansive reading than this court can give it. It is true that in *White*, the Supreme Court of Alabama adopted, and even expanded upon, the opinion of the Supreme Court of the United States in *Crown, Cork & Seal*, broadly pronouncing that "the commencement of a class action tolls the statute of limitations until such time as an independent action is filed, or until the denial of class certification, whichever may first occur". 470 So.2d 1193. In *White*, however, the Supreme Court of Alabama was recognizing this principle in a case in which the putative class action had only sought to establish a "**statewide** class of plaintiffs", in other words an Alabama class. *Id.* 1192. (emphasis supplied).

Conspicuous, and ultimately significant, is what the Supreme Court did **not** say in *White*. It did **not** say that an Alabama plaintiff can rely upon the pendency of a putative class action filed in **another state** in which the "would-be" class is **national** in scope. It did **not** say that an Alabama plaintiff can take his pick of four overlapping and redundant but otherwise virtually identical

14

"would-be", but facially spurious, national class actions, relying upon the one that would provide him the longest tolling period. Under Love's logic, *ad seriatim* spurious putative national class actions filed in various jurisdictions for the purpose of keeping at least one putative class action pending without a ruling on class certification, could prevent an Alabama statute of limitations from ever expiring.  PACER might or might not now locate some hypothetical putative national PPA class action pending in Guam.  Lastly, the Supreme Court of Alabama did **not** say that an Alabama plaintiff can rely upon a "would-be" national class in which the class claims depend upon the varying state laws of fifty states and territories, and in which the named in-state plaintiffs, on the face of their complaint, cannot meet the requirements of Rule 23, F.R.Civ.P., because they cannot adequately represent persons in forty-nine other jurisdictions (not counting Guam).  The rights of such an astronomical number of possibly injured persons would depend upon significantly different state laws in the different jurisdictions in which the injuries allegedly occurred. Such a national class would be so unmanageable as to be unimaginable.  No judge in his or her right mind would certify such a class under Rule 23.  The insurmountable problems inhering in the certification of such a class is recognized and examined in the following statement from Moore's Federal Practice, 3rd Edition, Section 23.45[5][d]:

> The one thing **that is certain** is that it is improper for
> a district court to certify a class without considering
> how the variations in state law actually affect the
> predominance of common questions.  Although differences
> among state negligence laws may lead to inefficiency by
> precluding resolution of mass torts in a single class
> action, that is a fundamental aspect of our federal
> system.  A court may not ignore variations in law from
> state to state in an effort to facilitate class
> treatment.

(emphasis supplied).

Because from its inception there was a facially fatal flaw in the Ricks's request for certification, even though a literal reading of *White* might theoretically have given Love something to rely on even when he was, in fact, blissfully unaware of the putative class action in Louisiana, he could never have expected *Ricks* to provide him salvation, because the class certification sought by *Ricks* was predestined to be denied.  The perfect proof of this easily anticipated result is found in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-1020 (7th Cir. 2002, *cert denied* 537 U.S. 1105 (2003)), in which the Seventh Circuit, consistent with Professor Moore's treatise, held that the certification of a nationwide class is not appropriate when it involves tort claims that would be governed by the laws of all fifty states.  In other words, when the MDL court refused to certify *Ricks* and the other jointly considered PPA cases, it was only doing what was utterly predictable.  The non-certification of *Ricks* was not a question of "if", but "when". Despite the broad language in *White*, an Alabama plaintiff simply

cannot lean on such a slender reed, especially when he does not even know that the reed exists.  After all, the rationale of the Supreme Court of the United States in *Crown, Cork & Seal*, upon which *White* depended, included the following:

> Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on named plaintiffs to press their claims.

103 S.Ct. 2397.  Although *White*, literally read, would purport to waive the requirement of actual knowledge of the pendency of a putative class action in order to "rely" upon it, the Supreme Court of Alabama did not suggest, much less hold, that an Alabama plaintiff, without knowledge of a nationwide putative class action pending in Guam, or in a county court in Montana, can sleep safely while that case winds toward its inevitable non-certification.

This court is not the only court in Alabama which has declined to take *White* the big step that Love wants to take it.  In *Bozeman v. Lucent Techs.*, 2005 WL 2145911 (M.D. Ala. Aug. 31, 2005), Judge Albritton held that Alabama courts, despite *White*, should refuse to apply equitable tolling when the class action being relied upon for tolling was filed in another jurisdiction.  In *Bozeman*, the plaintiffs argued that the existence of a nationwide class action in New Jersey tolled the statute of limitations on their Alabama action.  Although not identical in all respects to the instant case, and although not binding on this court, Judge Albritton's reasoning is persuasive, and, in the opinion of this court, is

entirely correct.

### Conclusion

Although the precise questions presented in the instant case have not been ruled on by Alabama's court of last resort, this court will not wear out its welcome with the Supreme Court of Alabama by certifying these two tolling questions to it. This court feels comfortable in its conclusion that the Supreme Court of Alabama would agree that this action is time barred. If the Eleventh Circuit has any serious doubts about the law of Alabama in this regard, it can, of course, certify the doubtful questions to the Supreme Court of Alabama.

Because all of Love's claims and causes of action are barred by one or both of the statutes of limitations interposed by Wyeth, and because there is no demonstrated factual basis for equitable tolling, defendant's motion for summary judgment will be granted by separate order.

DONE this 24th day of July, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE